FREDERICK M. WILLSON, Respondent, *v.* ELI B. LAW et al., as Executors, etc., Appellants.

In an action upon a promissory note for $1,100 alleged to have been given by L., defendant's testator, to one E., the defense was forgery. Plaintiff's evidence showed that the note was transferred absolutely by E. to one S. before maturity, without notice of any defect, under the following arrangement: E. owed S. $500 or $600 for money lent and $600 or $700 for services; he held a mortgage and some notes for a part of this debt and the balance rested in account. In consideration of the transfer of the note in suit S. canceled and discharged his mortgage and extinguished his debt. The amount of this was not fixed, and S. agreed that if his debt fell short of the amount of the note he would pay E. the difference. *Held*, that this agreement did not create a trust or leave in E. any interest in the note; and that, as against S and plaintiff, his transferee, the declarations of E. were not admissible as evidence and were properly excluded.

One B., a witness for plaintiff, testified that upon an exchange of farms with E., she agreed to pay him $1,000; that she gave a mortgage to L for that amount and he assumed her debt to E. by giving the latter the note in suit. The deed from E. to B. was produced by defendant, its date was about eight years prior to that of the note. E. it appeared was a man of doubtful responsibility, and testimony was given impeaching the character of B. for truth and veracity. Defendant's counsel offered in evidence a release of all demands and a note payable in one year executed by E. to L., bearing date about a month before the date of the note in suit. These were objected to and excluded. *Held*, error, that the evidence was competent and material as bearing upon the question of the truthfulness of B.'s testimony.

Plaintiff claimed and the testimony produced by him was to the effect that the signature to the note was that of L. No evidence was given tending to show and no suggestion was made on the trial that L. had authorized

anyone to sign the note for him. The court charged that "a party may just as effectually bind himself upon a piece of paper if he authorizes another to make it, and if he recognizes the authority of that other party as though he had made it himself;" this was excepted to. *Held* that the submission to the jury of such a question, as to which there was no evidence and which had not been raised on either side, was error; and as its tendency was misleading the error required a reversal.

(Argued January 28, 1889; decided March 5, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made April 28, 1887, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

This action was upon a promissory note alleged to have been made by George W. Law, defendant's testator. The note was dated April 27, 1874, for the sum of $1,100, payable to S. C. Emory or bearer ten years from date, with interest. The note was transferred by Emory to one Sayles and by him transferred to plaintiff.

The facts, so far as material, are stated in the opinion.

*M. M. Waters* for appellants. The presumption was entirely sufficient to have justified the jury in finding that Sayles did suspect there was something wrong about the note. (*Miller* v. *Race*, 1 Smith's L. C. 756 [9th Am. from the Eng. ed.].) If Sayles did part with $200 and became entitled to protection, for that reason, then, the case was one directly within the rule, that "as the holder can only recover because he has paid, he can only recover what he has paid." (*Huff* v. *Wagner*, 63 Barb. 215; *Harger* v. *Wilson*, Id. 237; *Todd* v. *Shelbourne*, 8 Hun, 510; *Moore* v. *Ryder*, 65 N. Y. 438; *Weaver* v. *Barden*, 49 id. 286; *P. Ins. Co.* v. *Church*, 81 id. 218; *Williams* v. *Smith*, 2 Hill, 301; *Youngs* v. *Lee*, 18 Barb. 189; *S. C.*, 12 N. Y. 534; *Cardwell* v. *Hicks*, 37 Barb. 458; *Riggs* v. *Hatch*, 16 Fed. Rep. 836.) Where a party against whom the declarations are offered claims as a privy by representation through the persons making them, or is identi-

fied in interest with him, they are clearly admissible. (*Von Sachs* v. *Kretz*, 72 N. Y. 555.) The charge of the court which permitted the jury to find that the signature was not Law's genuine signature, and then to find that Law authorized Emory or some third party, to sign the note, was error. (*William* v. *Brown*, 15 N. Y. 354; *Butler* v. *Miller*, 1 Com. 496; *Page* v. *Fazackerly*, 36 Barb. 393.)

*D. Francis Searle* for respondent. The witness, Mary E. Barnes, was not within the inhibition of the statute. (Code, § 829.) The true test of the interest of a witness is, that he would either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action or proceeding. It must be a present, certain and vested interest, and not an interest uncertain, remote or contingent. (Morill on Competency and Priv. of Witness, 15; Greenl. on Ev. § 390; *Hobart* v. *Hobart*, 62 N. Y. 80; *Miller* v. *Montgomery*, 78 id. 282; *Carpenter* v. *Soule*, 88 id. 251; *Sherman* v. *Scott*, 27 Hun, 331; *Nearpas* v. *Gilman*, 104 N. Y. 506.) The plaintiff by producing the note at the trial and proving the signature and that the maker acknowledged it to be genuine, and that it was transferred before maturity, made a *prima facie* case. (*Park Bank* v. *Watson*, 42 N. Y. 490; *Brown* v. *Leavitt*, 31 id. 113; 43 id 209; 81 id. 218.) Declarations made by the payee of a negotiable promissory note, while he owned it, are not admissible against one to whom he has transferred it. (*Whitaker* v. *Brown*, 8 Wend. 490; *Beach* v. *Wise*, 1 Hill, 612; *Brown* v. *Leavitt*, 31 N. Y. 113; *Tousley* v. *Barry*, 16 id. 497; *Paige* v. *Cagwin*, 7 Hill, 361; *Jones* v. *East Society*, 21 Barb. 174; *Smith* v. *Webb*, 1 id. 234; *Stark* v. *Bousell*, 6 Hill, 405; *Jacobs* v. *Remsen*, 36 N. Y. 669; *Vrooman* v. *King*, Id. 476; *Cuyler* v. *McCarthy*, 40 id. 226; *Bullis* v. *Montgomery*, 50 id. 358; *Tilson* v. *Terwilliger*, 56 id. 273; *Kellogg* v. *Norman*, 74 id. 595; *Coyne* v. *Weaver*, 84 id. 386; *Sanford* v. *Ellithorp*, 95 id. 48.) Until bad faith or want of considera-

tion on the part of the transferee of the note was shown, the transaction between Emory and Law, the maker, and admissions or statements made by Emory, were inadmissible. (*Brown* v. *Leavitt*, 31 N. Y. 113; *Tousley* v. *Barry*, 16 id. 497; *Paige* v. *Cagwin*, 7 Hill, 361; *Foster* v. *Beales*, 21 N. Y. 247, 248.)

FINCH, J. The real issue between these parties was as to the genuineness of the note given by Law to Emory, and which formed the subject of the action. The defense was forgery. If that note was genuine, it was transferred to Sayles before maturity, upon a full and fair consideration and without knowledge on his part of any defect in the security. He thus became a *bona fide* holder against whom and his immediate transferee no declarations of the payee and prior holder were admissible. The court so ruled and excluded them all. The propriety of that ruling is questioned on this appeal.

Sayles testified to a purchase of the note by himself and described it as an absolute transfer. He said that Emory owed him five or six hundred dollars for money lent, and six or seven hundred dollars for professional services rendered. For this debt he held a mortgage against Emory of $200 and some notes, the balance resting in account. When the note in controversy was transferred, or in consideration thereof, Sayles canceled and discharged the mortgage and extinguished his debt. The amount of that was not fixed or certain, and to meet a possible emergency Sayles agreed that if his debt fell short of the amount of the note he would pay Emory the difference. This agreement did not create a trust, as the learned counsel for the appellants claims, nor did it leave or vest in Emory any interest in the note after its transfer to Sayles. The contract to pay to Emory was part of the purchase-price of the transfer, and was, in substance, that Sayles should give Emory for the note its amount, with accrued interest, by the discharge of the latter's debt and a payment of the balance in cash. It left Sayles the absolute owner of the note and Emory in possession of a possible claim for a balance of the

purchase-price. That the latter viewed his right under the contract as an interest in the note, and assumed to mortgage it as such, simply showed a misapprehension of his real right and cannot affect the ownership of Sayles. So far, therefore, as any of the excluded proof had no other office or purpose than to assail the plaintiff's title by means of Emory's declarations, the ruling at the trial was correct.

But we are inclined to think that some of that proof stood outside of the rule thus enforced, and was admissible upon other grounds. The plaintiff had proved by Mrs. Barnes the origin and inception of the note, and, as a consequence, that it was genuine and not a forgery. In the face of that evidence, if admitted to be true, the defendant's proof, founded upon the handwriting of the signature, was of very little consequence. It was, therefore, vitally important to the defense to disprove or throw doubt upon the story which she told. In itself it was not free from elements of suspicion. She declared that she exchanged farms with Emory, agreeing to pay him in addition $1,100; that she gave a mortgage to Law for that amount, and that he assumed her debt to Emory by giving the latter the note in question. Now that note had ten years to run, with interest not payable annually, but accumulating until maturity. Why Emory should have preferred it to Mrs. Barnes' mortgage, upon which, naturally, the interest would be payable annually, we do not know and cannot readily imagine. If she was willing to give the security to Law, she would have been willing to have given it to him, and the motive for his choice is not readily discernable. The mortgage to Law was not put in evidence for some unknown reason, but the fact of its actual existence is perhaps fairly inferable from defendant's omission to show that there was no such record. The deed from Emory to Mrs. Barnes was produced and its date is found to be March, 1866, or eight years before the note in question was given, so that the debt of Mrs. Barnes to Emory must have remained unpaid and unsecured for that long period of time, and until the mortgage was given to Law and his note to Emory.

In that shape of the case the counsel for the defendant offered in evidence a release of all demands executed by Emory to Law on February 28, 1874, and a note from Emory to Law dated four days earlier for $221, payable, with interest, in one year. These papers preceded the note in controversy, which was dated April 7, 1874, by a little more than one month. They served to show that, at the earlier date, all accounts between Law and Emory had been settled, and the latter remained debtor in the amount of his note. When, therefore, Law took Mrs. Barnes' mortgage and promised to pay Emory $1,100, he already held the latter's note for $221, and one would naturally suppose would have deducted that debt from the note he was about to give. And yet, if Mrs. Barnes' story is true, he gave his own negotiable note for $1,100, having ten years to run, and quite sure to be transferred so as to cut off his own offset without applying upon his debt to Emory the latter's debt to him. Emory, to say the least, was a man of doubtful responsibility, whose note was not very likely to be paid, and it is not altogether easy to understand how the transaction could have taken the shape which Mrs. Barnes describes. Of course, it cannot be said that her account of it was impossible, but I am sure that the circumstance of the release and the note, slightly antedating the transaction in dispute, was quite material and bore upon the truth of Mrs. Barnes' evidence. Her character for truth and veracity was assailed on the one hand and defended on the other by witnesses speaking from general reputation, and any fact or facts bearing upon the probability or improbability of her story became quite material. The trial court rejected the release and the note under defendants' exception. That seems to have been done because Sayles was a *bona fide* holder, but that circumstance does not touch this question. If the evidence offered had been material solely to show a failure of consideration, the court would have been right in rejecting it; and it is quite possible that the purpose of the evidence was supposed by the court to be that only. But it was offered as bearing upon the *question* of consideration, that is, upon the question raised by the testi-

mony of Mrs. Barnes, which was the only *question* of considera-
tion existing in the case; and the proof offered bore upon the
genuineness of the note itself and upon the inquiry whether
it ever had an existence as such.    It was a fact; a situation
which was sought to be proved, not a declaration or assertion
of Emory; and a fact, too, which antedated the note, and
existed before that was made.    And it was one also which
bore directly upon the truthfulness of a witness, and of an
explanation which were vital to the controversy in hand.    We
think the evidence thus rejected should have been submitted
to the jury.    Its force and effect it is not our province to
anticipate or determine.

There was another exception of the defendant which we
think was well taken.    The proof on the part of the plaintiff
was that the signature of the note was in the genuine hand-
writing of Law, and that was supplemented by the positive evi-
dence of Mrs. Barnes and Law's admissions.    The proof on the
part of the defense was that it was not his signature, and genu-
ine checks signed by Law were put into the case to enable the
jury to make their own comparisons.    Nowhere in the case
was there any evidence or even a suggestion that Law author-
ized any one to sign his name to the note for him; and yet the
learned judge charged the jury " that a party may just as
effectually bind himself upon a piece of paper if he authorizes
a party to make it and if he recognizes the authority of that
other party to make it, as though he had made it himself."
To this there was an exception.    Nothing in the evidence
raised any such question or justified its introduction into the
case.    Its tendency was misleading.    It enabled the jury to
shut their eyes to the falsity of the signature if they should
find it false by guessing that some one else had written the
name with the consent and authority of Law.    It thus tended
to nullify and make unavailing the defendant's proof in denial
of the signature, and in a case where no such application of an
immaterial rule was admissible.    For the contest was distinctly
rested upon both sides on the genuineness of the signature, and
there was no warrant for submitting to the jury a question

which neither side raised and as to which the case was utterly bare of proof.

For these errors the judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.